ORAL ARGUMENT NOT YET SCHEDULED

# United States Court of Appeals
# for the District of Columbia Circuit

### No. 13-7141

NILO JEREZ,

*Plaintiff/Appellant,*

v.

THE REPUBLIC OF CUBA, *ET AL.*,

*Defendants/Appellees.*

_____

*Appeal from the United States District Court for the District of Columbia Case No. 1:09-mc-00466, Judge Richard W. Roberts*

## OPENING BRIEF FOR APPELLANT NILO JEREZ

Joseph I. Zumpano
Leon N. Patricios
Zumpano Patricios & Winker, P.A.
312 Minorca Avenue
Coral Gables, Florida 33134
(305) 444-5565

RICHARD J. OPARIL
KEVIN M. BELL
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000

*Counsel for Plaintiff-Appellant Nilo Jerez*

February 25, 2014

## CERTIFICATE AS TO PARTIES,
## RULINGS, AND RELATED CASES

I.  **All Parties, Intervenors, and Amicis**

    A.  **Parties**

        1.  **Plaintiff**

- Nilo Jerez

        2.  **Defendants**

- Republic Of Cuba
- Fidel Castro, Individually And As President Of The State And Council Of Ministries, Head Of The Communist Party And Commander-In-Chief Of The Military
- Raul Castro, Individually And As First Vice President Of The Council Of State And Council Of Ministries And Head Of The Cuban Revolutionary Armed Forces
- The Cuban Revolutionary Armed Forces
- El Ministro Del Interior

        3.  **Intervenor Defendants**

- Centro De Bioactivos Quimicos
- Centro De Ingeniera Genetica Y Biotecnologia
- Instituto De Medicina Tropical, Pedro Kouri
- Centro De Immunologia Molecular
- Centro Nacional De Biopreparados
- Centro Nacional De Inventigaciones Cientificas
- Instituto Finlay, Centro De Investigacion, Produccion De Vacunas Y Sueros
- Laboratorios Dalmer S.A.
- Corporacion Cimex, S.A., Corporation Cuba
- Corporacion Cuba Ron, S.A., Corporation Cuba
- Corporacion Habanos, S.A., Sociedad Anonima Cuba

- Corporacion Habanos, S.A., Corporation Cuba Doing Business As HABANOS, S.A.
- Empresa Cubana Del Tabaco
- Empresa Cubana Exportadora Del Caribe, Doing Business As Caribex Corporation Cuba
- Empresa De Grabaciones Y Ediciones Musicales, Egrem, Corporation Cuba
- Empresa Exportadora E Importadora De Productos Medicos Ta Medicuba, Corporation Cuba
- Havana Rum & Liquors, S.A., Corporation Cuba
- Laboratorios Biologicos Farmaceuticos, Doing Business As Labiofam Corporation CubaIntervenor Defendant
- CAMARA DE COMERCIO

## II.  **Rulings Under Review**

The rulings under review are as follows:

- Jerez v. Republic of Cuba, 2013 U.S. Dist. LEXIS 123424, 2013 WL 4578999 (D.D.C. Aug. 29, 2013)
- Jerez v. Republic of Cuba, 777 F. Supp. 2d 6, 2011 U.S. Dist. LEXIS 32976 (D.D.C. 2011)

## III.  **Related Cases**

The following are a list of related cases:

- *Jerez v. Republic of Cuba*, 2010 U.S. Dist. LEXIS 15462, 2010 WL 629846 (E.D. Va. Feb. 16, 2010)
- *Jerez v. Republic of Cuba,* Case No. 08-23405-CIV-Hoeveler (S.D. Fla)
- *Jerez v. The Republic of Cuba*, Case No. 05-18719 CA 9 11th Judicial Circuit for Miami-Dade County, FL

# TABLE OF CONTENTS

Certificate As To Parties, Rulings, And Related Cases ........................... 1

I.     All Parties, Intervenors, and Amicis ................................................. i

    A.     Parties ......................................................................................... i

        1.     Plaintiff ............................................................................... i

        2.     Defendants ......................................................................... i

        3.     Intervenor Defendants ..................................................... i

II.    Rulings Under Review ....................................................................... ii

III.   Related Cases ....................................................................................... ii

Table Of Contents .................................................................................... iii

Table Of Authorities ................................................................................. v

Glossary Of Abbreviations ...................................................................... vii

Jurisdictional Statement .......................................................................... 1

Pertinent Statutes And Regulations ....................................................... 1

Statement Of Issues Presented For Review ........................................... 1

Statement Of The Case ............................................................................. 2

I.     Relevant Factual Background ........................................................... 2

II.    Relevant Procedural Background ...................................................... 5

Summary Of Argument ............................................................................. 12

Argument ................................................................................................... 15

I.     Scope Of Review ................................................................................. 15

II.    The District Court Erred In Finding That Subject Matter
    Jurisdiction Did Not Exist. ............................................................... 16

III.  Evidence Supports That Two Exceptions To Sovereign Immunity Are Applicable.................................................. 22

    A.  The Non-Commercial Tort Exception .................................. 22

        1.  The District Court Failed to Consider the Undisputed Science Behind the Tortious Acts............ 23

        2.  The District Court's Opinion Leaves No Remedy for Biological Agents. ..................................................... 25

        3.  Terrorist Defendants Have Never Refuted That The Tortious Acts Occurred In The United States...... 27

    B.  The Terrorism Exception Also Applies. ............................... 29

        1.  The Court Fails to Recognize the Ongoing Torture Occurring Inside Jerez's Body ........................ 30

        2.  The Florida State Court Determined Jerez Met the Terrorism Exception............................................... 31

Conclusion.................................................................................... 34

Statutory Addendum .......................................................... Add. 1

Certificate Of Compliance

Certificate Of Service

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Argentine Republic v. Amerada Hess Shipping Corp.,*
  488 U.S. 428 (1989) ...................................................................... 25, 26

*Cantor Fitzgerald, L.P., v. Peaslee,*
  88 F.3d 152 (2d Cir. 1996) ................................................................ 17

*NML Capital, LTD. v. Republic of Argentina,*
  680 F.3d 254 (2d Cir. 2012) .............................................................. 15

*Persinger v. Islamic Republic of Iran,*
  729 F.2d 835 (D.C. Cir. 1984) ........................................................... 22

*Weininger v. Castro,*
  462 F. Supp. 2d 457 (S.D.N.Y. 2006).......................... 16,17,18,19,20,21

*Yang Rong v. Liaoning Province Gov't,*
  452 F.3d 883 (D.C. Cir. 2006) ...................................................... 15, 16

**FEDERAL STATUTES**

28 U.S.C. § 605(a)(5)......................................................................... 14

28 U.S.C. § 1291.................................................................................. 1

28 U.S.C. § 1602.................................................................................. 8

28 U.S.C. § 1603(a) ......................................................................... 5, 19

28 U.S.C. § 1604................................................................................ 33

28 U.S.C. § 1605........................................................................... 20, 33

*28 U.S.C. § 1605(a)(5)..................................... 1, 22, 23, 25, 26, 27, 29, 33

*28 U.S.C. § 1605(a)(7) ............................ 1,6 ,8 ,15, 20, 22, 29, 30, 31, 33

28 U.S.C. § 1606.................................................................5, 20

28 U.S.C. § 1608(e) ....................................6, 16, 17, 19, 20, 33

**OTHER STATUTES**

Foreign Sovereign Immunities Act of 1976................................8

**TREATISES**

18A Wright, Miller & Cooper, Federal Practice & Procedure §
    4428 (2d ed. 2002) ..............................................................18

**OTHER AUTHORITIES**

By Imaging Live Cells, Researchers Show How Hepatitis C
    Replicates," The Rockefeller University, available at
    http://newswire.rockefeller.edu/index.php?page=engine&id=839.....24

_____

*Authorities upon which we chiefly rely are marked with asterisks.

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| Agencies and Instrumentalities | Centro de Bioactivos Quimicos; Centro de Histoterapia Placentaria; Centro de Ingeniera Genetica y Biotecnologia; Instituto de Medicina Tropical "Pedro Kouri"; Centro de Investigaciones Para la Industria Minero-Metalurgica; Centro de Immunologia Molecular; Centro Nacional de Biopreparados; Centro Nacional de Investigaciones Cientificas; Instituto Finlay, Centro de Investigacion, Produccion De Vacunas Y Sueros; Laboratorios Dalmer, S.A.; Medicuba; Universidad de la Habana; Artex, S.A. Dba Artex; Corporation CIMEX, S.A.; Corporacion Cuba Ron, S.A.; Corporacion Habanos, S.A.; Corporacion Habanos, S.A. Dba Habanos, S.A.; Empresa Cubana Del Tabaco, (Cubatabaco); Empresa Cubana Exportada Del Caribe Dba Caribex; Empresa De Grabaciones Y Ediciones Musicales (Egrem); Empresa Exportadora E Importadora De Productos Medicos Ta Medicuba; Etecsa Empresa De Telecomunicaciones De Cuba S.A.; Havana Rum & Liquors, S.A.; and Laboratorios Biologicos Farmaceuticos Dba Labiofam |
| ATCA | Alien Tort Claims Act |
| Jerez | Plaintiff/Appellant Nilo Jerez |
| FSIA | Foreign Sovereign Immunities Act |
| Terrorist Defendants | The Republic of Cuba, Fidel Castro Ruz, Raul Castro Ruz, the Cuban Revolutionary Armed Forces, and El Ministerio del Interior |

## JURISDICTIONAL STATEMENT

This is an appeal from a final order of the United States District Court for the District of Columbia. The action before the District Court was for the enforcement of a final judgment issued by the United States District Court of the Southern District of Florida. The subject matter jurisdiction of the District Court is fully discussed *infra*.

The District Court order overruling the objections to the Magistrate's report and recommendation was entered on August 29, 2013. The notice of appeal was timely filed on September 12, 2013. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes are contained in the addendum.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Whether the District Court erred in concluding that it lacked subject matter jurisdiction under 28 U.S.C. § 1605(a)(5).

2.     Whether the District Court erred in concluding that it lacked subject matter jurisdiction under 28 U.S.C. § 1605(a)(7).

3.     Whether the District Court erred in failing to enforce plaintiff/appellant Nilo Jerez's judgment from the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, which was

given full faith and credit by United States District Court for the Southern District of Florida.

## STATEMENT OF THE CASE

### I.    Relevant Factual Background

Sent to a concentration camp in 1964 as a minor child, plaintiff/appellant Nilo Jerez ("Jerez") was tortured at the hands of the Republic of Cuba, and its codefendants, Fidel Castro Ruz, Raul Castro Ruz, the Cuban Revolutionary Armed Forces, and El Ministerio del Interior (collectively the "Terrorist Defendants"). Specifically, the Terrorist Defendants: (1) forced Jerez to perform agonizing work and other laborious tasks at the direction of his captors; (2) denied Jerez adequate food (often infested with insects); (3) denied Jerez adequate hygiene; (4) denied Jerez adequate living quarters; (5) subjected Jerez to unspeakable tortures such as being placed into a tub filled with human feces and urine up to his neck; (6) placed Jerez in solitary confinement after attempted escape and recapture; (7) subjected Jerez to a sham trial and sentenced him to a term of imprisonment of 25 years; (8) kept Jerez in solitary confinement for more than six months at a time; and (9) denied Jerez personal contact with friends or family,

even the right to receive or send correspondence. (State Court Final Judgment and Statement of Nilo Jerez, [D.E. 10-1], B & C).

Further, for three months from the end of 1970 to January 1971, Jerez was incarcerated at the Sala Castellano ward in a "psychiatric hospital" known as Mazorra. During his incarceration there, he was: (1) denied clothing and food; (2) forced to live in inhumane conditions, being forced to live amongst his and others' urine and feces; (3) subjected to forced purposeful injections, after some of which Jerez blacked out; (4) continually interrogated and tortured throughout the incarceration; and (5) continuously threatened and repeatedly advised that he would be shot should he and/or his family continue protesting or objecting to the actions of the Castro regime.

Regular torture sessions included electroshock "treatment" whereby electricity was passed through terminals into Jerez's head and testicles, causing severe pain and ultimately leading to loss of bodily functions and unconsciousness. These electric shock torture sessions were administered after Jerez was placed in a trough of water which included the urine and feces of other victims. In February 1971, Jerez was sent to Boniato prison, where torture continued and conditions

were inhumane. During this incarceration, Jerez suffered a fractured skull and fractured seventh vertebrae. (State Court Final Judgment and Statement of Nilo Jerez, [D.E. 10-1], B & C). It is undisputed that the Terrorist Defendants purposefully injected Jerez with the Hepatitis C virus during the above mentioned torture sessions. (Affidavit of Lennox Jeffers, M.D., [D.E. 25-6] F, ¶¶ 5-9; Affidavit of Ambassador Valladares, [D.E. 25-1] A, ¶¶ 2, 3, and 5-9).

Jerez left Cuba, came to the United States, and became a citizen of the United States. Unfortunately, as a citizen of the United States and residing in the United States, he still leads a tortured life due to the individual, independent, and distinct tortious replication, materialization, and ravaging of the Hepatitis C virus and cirrhosis of the liver.

Dr. Jeffers has been Jerez's physician since 1999. In his affidavit, Dr. Jeffers confirmed that Jerez received Hepatitis C from Cuban officials and that the disease is causing his cirrhosis of the liver, which was diagnosed in its early stages in 1998 (Affidavit of Lennox Jeffers, M.D., [D.E. 25-6], F, ¶¶ 5-9) – long after Jerez arrived in the United States. Moreover, in his affidavit, Dr. Jeffers explicitly states that he

has been informed by Jerez that Jerez was injected with the Hepatitis C virus by Cuban officials during their torture of him. (Affidavit of Lennox Jeffers, M.D., [D.E. 25-6], F, ¶ 9). Due to the horrifying acts of torture, cruelty, and savagery to which Jerez was subjected, he filed this lawsuit against the Terrorist Defendants.

## II.     Relevant Procedural Background

On September 15, 2005, Jerez filed a complaint (the "State Court Complaint") in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County (the "Florida State Court") against Terrorist Defendants. The State Court Complaint squarely placed the issue of sovereign immunity before the Florida State Court. It alleges that "Defendant CUBA is a foreign State within the meaning of 28 U.S.C. §1603(a)." (State Court Complaint, [D.E. 37-12], M, Part 1, ¶ 8). The Complaint also acknowledges that the "Defendant MILITARY is a political subdivision of Cuba" *Id*. ¶ 9. that the "Defendant MINISTRY was and is, an agency or instrumentality of CUBA as defined and referenced in The Foreign Sovereign Immunities Act, 28 U.S.C. §1606." *Id*. ¶ 12. And, at paragraph 3, it alleged: "Defendant, CUBA and the other Defendants acting under its authority are not immune from suit

pursuant to 28 U.S.C. §1605(a)(7) or any other applicable international agreements." Thus, to proceed to final judgment, the Florida State Court had to follow the requirements of 28 U.S.C. § 1608(e) ("No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision, thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court.").

The Florida State Court record clearly established that Jerez put before the Florida State Court that he was purposefully injected with Hepatitis C, from which he is currently suffering, at the hands of the Terrorist Defendants. Specifically, the State Court Complaint alleged that Jerez was subjected to numerous acts of torture which included "forced drug injections" and "drug injections." *Id.* ¶¶ 29, 35, 52. The State Court Complaint also alleges that "[a]s a result of the physical and mental torture . . . Jerez has been left with numerous long term injuries and illnesses, including Hepatitis C . . . ." *Id.* ¶ 31.

Jerez filed additional materials with the State Court, such as a Trial Memorandum that referenced "forced psychotropic drug

injections," "forced drug injections" and other acts of torture which have left him with "Hepatitis C which has progressed to cirrhosis of the liver and in all probability will result in a diminished lifespan." (Jerez's Trial Memorandum, [D.E. 37-18], M, Part 7, at 5-6, 8). Jerez also provided a Statement that referenced his Hepatitis C and a Neuropsychological Evaluation by Dr. Jorge Herrera that referred to Hepatitis C. (Statement of Nilo Jerez, [D.E. 10-1], C, at 8-9; Herrera Evaluation [D.E. 37-19] M, Part 8)).

After the Terrorist Defendants were served and failed to appear, a trial took place on January 30, 2007 at which the State Court received extensive evidence. (State Court Final Judgment, [D.E. 10-1], B, at 2-8). While there is no trial transcript, the State Court's Final Judgment explicitly found that it had "jurisdiction over the claims asserted by Mr. Jerez" but did not cite to the FSIA and instead cited to the Alien Tort Claims Act ("ATCA"). *Id. at* 2. The State Court Judgment recounted many horrific acts suffered by Jerez when he lived in Cuba and also referred explicitly to Jerez's "Hepatitis C which has progressed to cirrhosis of the liver" and that Jerez was subjected to "forced drug injections." *Id. at* 4, 6. The Terrorist Defendants did not appeal the

State Court Judgment, which ruled that Jerez was entitled to $200 million, nor moved to vacate its judgment.

Thereafter, on December 9, 2008, Jerez filed a Complaint in the United States District Court for the Southern District of Florida (the "Federal Court Complaint") seeking full faith and credit for his State Court Final Judgment. *Jerez v. Republic of Cuba*, D.E. 1, Case No. 08-23405-CIV-Hoeveler (S.D. Fla) (available on PACER). In his Federal Court Complaint, Jerez again placed the sovereign immunity of the Terrorist Defendants squarely before the court referencing FSIA in paragraphs 1, 3, 5, 8, 9, 10, and 11. *Id.* Specifically, paragraph 1 of the Complaint referenced 28 USC § 1605(a)(7) and paragraph 3 explicitly alleged that sovereign immunity had been waived pursuant to "the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602, *et seq.*" *Id.* Jerez also alleged that the "Florida State Court had subject matter jurisdiction over the underlying action pursuant to the FSIA" and that the "Defendants are not entitled to immunity from this action pursuant to the FSIA." *Id.* Jerez attached to his Federal Court Complaint a copy of the State Court Judgment.

The Terrorist Defendants failed to appear before the Southern District of Florida and on May 6, 2009, the Court entered a Final Default Judgment Granting Full Faith & Credit to State Judgment (the "Federal Final Judgment"). The Terrorist Defendants did not appeal this judgment nor moved for the Southern District of Florida to vacate its judgment.

On September 1, 2009, Jerez registered his Federal Final Judgment in the U.S. District Court for the District of Columbia and began collection proceedings. [D.E. 1]. Although none of the named Terrorist Defendants appeared, 24 entities,[1] who Jerez alleges are

---

[1]    The twenty-four agencies and instrumentalities who appeared to defend Cuba's interests are: Centro de Bioactivos Quimicos; Centro de Histoterapia Placentaria; Centro de Ingeniera Genetica y Biotecnologia; Instituto de Medicina Tropical "Pedro Kouri"; Centro de Investigaciones Para la Industria Minero-Metalurgica; Centro de Immunologia Molecular; Centro Nacional de Biopreparados; Centro Nacional de Investigaciones Cientificas; Instituto Finlay, Centro de Investigacion, Produccion De Vacunas Y Sueros; Laboratorios Dalmer, S.A.; Medicuba; Universidad de la Habana; Artex, S.A. Dba Artex; Corporation CIMEX, S.A.; Corporacion Cuba Ron, S.A.; Corporacion Habanos, S.A.; Corporacion Habanos, S.A. Dba Habanos, S.A.; Empresa Cubana Del Tabaco, (Cubatabaco); Empresa Cubana Exportada Del Caribe Dba Caribex; Empresa De Grabaciones Y Ediciones Musicales (Egrem); Empresa Exportadora E Importadora De Productos Medicos Ta Medicuba; Etecsa Empresa De Telecomunicaciones De Cuba S.A.; Havana Rum & Liquors, S.A.; Laboratorios Biologicos Farmaceuticos Dba Labiofam.

agencies and instrumentalities of Cuba, appeared to "defend" Cuba's interests (collectively referred to as "Agencies and Instrumentalities"). The Agencies and Instrumentalities argued, among other things, that the Florida State Court and the Southern District of Florida did not have subject matter jurisdiction over the matter.

On May 6, 2010, the Magistrate Judge held a hearing during which he stated that the Court had no intention of going back and re-trying the underlying action. Specifically, in response to the Agencies and Instrumentalities' counsel's statement that "this notion that they're relying on of – Cuba purposely injected, or injected purposely, or otherwise, Jerez, with Hepatitis C is a claim that was never made in the state court, never made in the Southern District of Florida. There's not a piece of evidence to support it," (Hearing Tr., May 6, 2010, [D.E. 54], at 47, ll. 2-7). The Magistrate Judge stated: "I'm not going, and this Court is not going, and the Eastern District [of Virginia] is not going to try the case. The matter is before the Court at the moment, on a faith and credit – you know, giving full faith and credit to the ruling of another court, albeit a state court down in Florida, but I don't think we can revisit the merits of that case at this stage." *Id. at* 47, ll. 13-18.

Furthermore, during oral argument, counsel for Jerez pointed out that opposing counsel was mistaken because the Florida State Court had squarely considered the Hepatitis C claim. He argued:

> I would like first to go back to what Mr. Patricios was talking about on 1608, and the need to consider.
>
> Well, when you look at their arguments, the Movant's arguments, they act as if the Hepatitis C argument was made for the first time at this level. It's just untrue.
>
> When you look at the documents that are available in the file, the only ones which we know of that exist, in the Complaint, particularly in paragraphs 29 and 31, "forced injections, torture," are referenced.
>
> Two paragraphs down from paragraph 29, paragraph 31 says as a result of that torture, and it lists Hepatitis C.
>
> You find a similar paradigm inside the trial memorandum, where forced drug injections are referenced in page 5, and where, on page 5 and 6, as a result of the torture, he was contracting Hepatitis C.
>
> And in the trial statement on page 8 and 9, "As a result of the torture and abuse, I suffer from a number of medical ailments," I'm paraphrasing, and he lists Hepatitis C.
>
> Your Honor, Hepatitis C is an ongoing attack. It supplied subject matter jurisdiction to the other courts. It supplies your jurisdiction here, under TRIA.

(Motions Hearing Before the Honorable Alan Kay, United States Magistrate Judge, July 19, 2010 [D.E. 82], at 35-36, 9-25 and 1-7.) Thus, it is clear that the Florida State Court has before it Jerez's arguments about Hepatitis C, which were not raised for the first time during the enforcement proceedings.

However, Magistrate Judge Kay did revisit the merits of the case and, on March 29, 2011, he issued a Memorandum Opinion in which he ruled that there was no subject matter jurisdiction to enforce Jerez's State Court Judgment. [D.E. 108 at 29]. Thereafter, Jerez filed objections to the Magistrate Judge's order under Local Civil Rule 72.2(b). [D.E. 111]. On August 29, 2013, Chief Judge Roberts ruled that "[b]ecause the magistrate judge's rulings as to subject matter jurisdiction are not clearly erroneous or contrary to law, Jerez's objections will be overruled." [D.E. 129 at 2].

## SUMMARY OF ARGUMENT

The Terrorist Defendants assaulted Jerez through the use of a biological weapon – the Hepatitis C virus – which was purposefully introduced into his system by the Terrorist Defendants. In his Memorandum Opinion, the Chief Judge conceded that Jerez "alleged

that he was purposefully infected with Hepatitis C and developed cirrhosis of the liver, among other injuries." [D.E. 129 at 2]. Unlike terrorist acts that can be identified to have occurred at a specific, violent moment in time, this case involves biological warfare that, uniquely, creates repeated acts of terrorism. Here, there is biological warfare as the Hepatitis C virus replicates itself, and therefore a terrorist act, that is ongoing in the body of Jerez, who is a citizen of the United States and resides in the United States. In order to deny Jerez relief, which the District Court did below, one has to ignore the fundamental science of the ongoing biological warfare inside the body of Jerez.

To establish the ongoing nature of the tortious acts, Jerez submitted unrefuted evidence to the Court which established that "[t]he Hepatitis C virus is a prolific replicator, able to produce up to a trillion particles per day in an infected person by hijacking liver cells in which to build up its viral replication machinery." ([D.E. 25-6], I, at 1). Thus, the nature of the Hepatitis C virus and the method by which it replicates itself, hijacks, and ultimately destroys liver cells is a biological attack that begins anew with each cellular replication. As

such, from the time of delivery of the Hepatitis C virus in Jerez's body at the hands of Cuba, each deployment (through such viral replication) of the biological agent is an independent event with an identifiable moment of commencement and an identifiable moment of conclusion. Each such identifiable event from the moment of commencement and to the moment of conclusion marks the completion of a tort that fully occurs within the territorial jurisdiction of our nation. Moreover, Jerez submitted evidence that the Hepatitis C virus has caused injury to him as a citizen of the United States residing in the United States, cirrhosis of the liver, which was diagnosed in its early stages in 1998. (Affidavit of Lennox Jeffers, M.D., [D.E. 25-6], F, ¶¶ 5-9).

Due to viral replication nature of the Hepatitis C virus, Jerez's body has been subjected to ongoing individual and independent or distinct tortious acts and acts of torture and will continue to be subjected to such tortious acts and acts of torture for the rest of his life. As such, the District Court erred in concluding that Jerez lacked subject matter jurisdiction under 28 U.S.C. § 605(a)(5) because "the tortious acts that gave rise to [Jerez's] injuries undoubtedly occurred outside of the United States." [D.E. 129 at 8]. Similarly, due to the ongoing nature

of the tortious acts, the District Court erred in concluding that Jerez lacked subject matter jurisdiction under § 1605(a)(7) because Cuba was not a terrorist state, and Jerez was not a United States Citizen at the time of the tortious acts.

## ARGUMENT

This is a case of international, historical, and legal importance regarding terrorism and more specifically biological warfare. Unlike terrorist acts that can be identified to have occurred at a specific, violent moment in time, this case involves biological warfare that, uniquely, creates repeated acts of terrorism. In that context, a court cannot construe a statute without considering the basic fundamental science of the terrorist action at issue. Here, there is biological warfare, and therefore a terrorist act, that is ongoing in the body of Jerez. The District Court erred by failing to consider the fundamental science that established ongoing terrorist acts inside the body of Jerez.

## I.    Scope Of Review

The District Court's legal conclusions regarding the Foreign Sovereign Immunity Act is subject to de novo review. *See, e.g., NML Capital, LTD. v. Republic of Argentina*, 680 F.3d 254, 256-57 (2d Cir. 2012); *Yang Rong v. Liaoning Province Gov't*, 452 F.3d 883, 887-88

(D.C. Cir. 2006). The District Court's ruling vacating Jerez's attachment is reviewed for abuse of discretion. *Id.*

## II.  The District Court Erred In Finding That Subject Matter Jurisdiction Did Not Exist.

In determining whether the Magistrate Judge erred in reviewing the subject matter jurisdiction of Florida State Judgment, the District Court considered whether, "in the absence of a defendant's jurisdictional objection, a court may inspect the subject matter jurisdiction of the default judgment after a reviewing federal district court has already granted full faith and credit to the original state court's default judgment." [D.E. 129 at 15]. The District Court found *Weininger v. Castro*, 462 F. Supp. 2d 457 (S.D.N.Y. 2006) to be instructive as to this issue. *Id.* We agree. *Weininger* provides, in relevant part:

> Nor would enforcement of these judgments under these circumstances be so clearly wrong that it would comprise a violation of some constitutional principle. In this regard, it bears repeating that the Florida state courts did not simply enter default but instead were obligated to comply with FSIA § 1608(e), which requires that "[n]o judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the

claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). Accordingly, the state courts conducted a hearing and took evidence before finding that subject matter jurisdiction existed. (See Pls. Reply Mem. at 21 n.15 (discussing evidence placed before the Florida state courts, including expert submissions); McCarthy Judgment at 5-7; Weininger Judgment at 4, 5-7). While those hearings may have entailed the submissions of only one side, in the absence of a collateral attack contesting the sufficiency of the evidence presented to establish jurisdiction, it is not appropriate at this stage for this Court on its own motion to review those findings. Moreover, the Florida state court examined its jurisdiction as required by FSIA § 1608(e) and found an arguable basis for jurisdiction that is entitled to presumptive validity, absent a sufficiently compelling challenge by the judgment debtors or other party with enough standing to intervene on their behalf. Even if some colorable ground to charge error on the part of the state court were to be introduced at this point, under the circumstances prevailing here, this Court discerns no basis to support a finding that the state courts' judgments represent such a plain usurpation of power to warrant this Court taking it upon itself to reexamine the state courts' findings and defeat the compelling interest in repose for matters settled after extensive litigation. This course holds true particularly in a case in which the record demonstrates that the defendant was given notice and afforded multiple opportunities to contest the courts' exercise of jurisdiction and elected not to do so. See *Cantor Fitzgerald, L.P., v. Peaslee*, 88 F.3d 152, 155 n.2 (2d Cir. 1996) ("[A] judgment rendered by a court

- 17 -

assuming subject-matter jurisdiction and sustained on direct appeal is entitled to preclusive effect as long as the District Court did not 'plainly usurp jurisdiction' over the action."); *Nemaizer*, 793 F.2d at 65 (in context of Rule 60(b)(4) motion, "[s]ince a court has power to determine its own jurisdiction and, in fact, is required to exercise that power sua sponte, it does not plainly usurp jurisdiction when it merely commits an error in the exercise of that power. Rather, a court will be deemed to have plainly usurped jurisdiction only when there is a 'total want of jurisdiction' and no arguable basis on which it could have rested a finding that it had jurisdiction."); 18A Wright, Miller & Cooper, Federal Practice & Procedure § 4428 at 15-16 (2d ed. 2002) ("So long as the court that entered judgment can assert personal jurisdiction over the defendant, it may fairly claim the right to determine its own subject-matter jurisdiction. This claim should be honored unless the lack of jurisdiction is so clear that a second court can act to protect the defendant against the imposition of any burden by a manifestly powerless tribunal and to defeat a judgment that offers no plausible basis for repose.").

462. F. Supp. 2d at 474-75.

The Chief Judge determined that *Weininger* was distinguishable from the case at hand because, in *Weininger*, the claimant established his claim "by evidence satisfactory to the court" and the court "held hearings, took evidence, satisfied themselves of their jurisdiction, and expressly so ruled." [D.E. 129 at 17, citing *Weininger*, 462 F. Supp. at

469]. The Chief Judge found that Jerez did not establish his claim by evidence satisfactory to the court, and that the State Court did not satisfy itself of jurisdiction by assuming that the Florida State Court did not consider the FSIA even though, as the Chief Judge concedes, "Jerez's state court complaint included references to the FSIA." [D.E. 129 at 18]. This assumption, that the Florida State Court did not consider the FSIA, is incorrect.

Here, as in *Weininger,* it is without question that the issues of subject matter jurisdiction and sovereign immunity were raised in the State Court Complaint, that a trial occurred pursuant to § 1608(e), and that the Florida State Court entered a final judgment finding jurisdiction. The State Court Complaint squarely placed the issue of sovereign immunity before the Florida State Court. The State Court Complaint alleges that "Defendant CUBA is a foreign State within the meaning of 28 U.S.C. § 1603(a)." (State Court Complaint, [D.E. 37-12], M, Part 1, ¶ 8). The Complaint also acknowledges that the "Defendant MILITARY is a political subdivision of Cuba" (*Id.* ¶ 9), that the "Defendant MINISTRY was and is, an agency or instrumentality of CUBA as defined and referenced in The Foreign Sovereign Immunities

Act, 28 U.S.C. § 1606." *Id.* ¶ 12. And, at ¶ 3, it alleged: "Defendant, CUBA and the other Defendants acting under its authority are not immune from suit pursuant to 28 U.S.C. § 1605(a)(7) or any other applicable international agreements." Thus, to proceed to final judgment, the Florida State Court had no avenue to follow other than to follow the requirements of 28 U.S.C. § 1608(e) ("No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision, thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."), even if it did not expressly analyze § 1605. It is undisputed that the Florida State Court held such a trial, and entered its final judgment.

The only significant difference between the final judgment here and the final judgment in *Weininger* is that the one here did not explicitly discuss sovereign immunity. That, of course, does not mean that the Florida State Court did not fully and fairly litigate the issue. Had there been no trial, no mention of sovereign immunity at any point in the proceeding, and no facts to support a waiver of sovereign immunity, then perhaps one could argue that *Weininger* is

distinguishable from this case, but it is not. As such, the holding from *Weininger*, that "the policies and principles underlying the res judicata doctrine would make it manifestly inequitable for this Court to reopen the judgments so as to permit a challenge to the underlying adjudication at the request of parties not affected by the judgments[,]" should be applied to the case at hand. [D.E. 129 at 17, quoting *Weininger,* 462 F. Supp. 2d at 469].

In sum, subject matter jurisdiction existed at the time of the State Court Judgment and still exists today. Jerez is currently a U.S. citizen and was one when he brought his State Court Complaint. He is currently and was, when in the Florida State Court, suffering from daily terrorist attacks and torture in the form of the replication of the Hepatitis C virus, which he obtained at the hands of the Defendants. The Hepatitis C is now an ongoing terrorist attack with an independent moment of commencement and end at each beginning and end of cell destruction and through viral replication, which is cirrhosis of the liver. Given the existence of these facts, the District Court erred in finding that subject matter does not exist under FSIA.

III. **Evidence Supports That Two Exceptions To Sovereign Immunity Are Applicable.**

As explained in more detail below, two exceptions to sovereign immunity are applicable to Jerez under the FSIA: the non-commercial tort exception under 28 U.S.C. § 1605(a)(5) and the terrorism exception under 28 U.S.C. § 1605(a)(7).

A. **The Non-Commercial Tort Exception**

The FSIA provides an exception to jurisdictional immunity of a foreign state. Specifically, 28 U.S.C. § 1605(a)(5) provides an exception as follows:

> not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; . . . .

The plain language of § 1605(a)(5) demonstrates that an exception to sovereign immunity arises if a foreign state causes "personal injury or death, or damage to or loss of property" in the United States. This court has already held that "both the tort and the injury must occur in the United States." *Persinger v. Islamic Republic of Iran*, 729 F.2d 835,

842 (D.C. Cir. 1984). However, even if both the tort and the injury must occur in the United States, Jerez still meets this test because, as explained below, at least one, and in fact more than one, of the separate and distinct tortious acts occurred in the United States.

### 1.    The District Court Failed to Consider the Undisputed Science Behind the Tortious Acts.

While acknowledging that Jerez was purposefully subjected to conditions that caused his Hepatitis C infection, the District Court ruled that Jerez did not meet the requirements of § 1605(a)(5) because Jerez was not a United States citizen when the tortious acts that gave rise to his injuries occurred. [D.E. 129 at 2]. This conclusion assumes that the only one tortious act occurred – the purposeful injection of Hepatitis C. This is incorrect and ignores the science behind the tortious acts.

The nature of the Hepatitis C virus and the method by which it replicates itself, hijacks, and ultimately destroys, liver cells is a biological attack that begins anew with each cellular replication.[2] From

---

[2]    Hepatitis C is a viral infection that may attack the liver and cause cirrhosis thereof. Jerez suffers from chronic Hepatitis C, which means the virus remains in his body for the duration of his life after the time of infection and continually multiplies to hijack, attack, and kill liver cells.

- 23 -

the time of delivery of the Hepatitis C virus in Jerez's body at the hands of the Terrorist Defendants, each deployment (through such viral replication) of the biological agent is an independent event with an identifiable moment of commencement and an identifiable moment of conclusion. Thus, each deployment of the biological agent is a separate and distinct tort.

In his affidavit, Dr. Jeffers confirmed Jerez was diagnosed with Hepatitis C that the disease is causing his cirrhosis of the liver, long after Jerez arrived in the United States. (Affidavit of Lennox Jeffers, M.D., [D.E. 25-6], F, ¶¶ 5-9). Because Jerez is in the United States and the biological weapon in his body, to wit the Hepatitis C virus, has been discharging and ravaging his body here in the United States and which are ongoing currently inside Jerez while he is a United States citizen. The appellants did not dispute this evidence below.

_____

According to an article by the Rockefeller University Journal of Virology, "[t]he Hepatitis C virus is a prolific replicator, able to produce up to a trillion particles per day in an infected person by hijacking liver cells in which to build up its viral replication machinery." See "By Imaging Live Cells, Researchers Show How Hepatitis C Replicates," The Rockefeller University, available at http://newswire. rockefeller.edu/index.php?page=engine&id=839. ([D.E. 25-6] I, at 1).

### 2.   The District Court's Opinion Leaves No Remedy for Biological Agents.

Statutory interpretation should not ignore basic science. The District Court ruled the non-commercial tort exception would be broadened far beyond the expectation of Congress if it was applied to torts such as replication of the Hepatitis C virus and cirrhosis of the liver caused by that virus. The Court ruled this way because "Section 1605(a)(5) is directed primarily at the problem of traffic accidents but is cast in general terms . . . ." [D.E. 129 at 6, citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439-40 (1989)]. In effect, the ruling below narrowly interprets a statute to provide immunity to a "terrorist party" in an era of biological warfare, illustrating a disconnect from the circumstances faced by our Nation and from fundamental basic science. The narrow reading of the legislative history of the statute, which was centered on car accidents, would place "terrorist parties" that commence delivery of biological weapons from outside our borders within unintended protections under the FSIA.

For instance, if Congress did not intend to include the tortious acts of biological warfare which gave rise to Jerez's injuries in enacting § 1605(a)(5), then there would be no recourse for a personal injury that

resulted from the opening of a package that was mailed from abroad and contained a chemical agent or biological weapon, for example anthrax. Biological weaponry, by its very nature, can entail subsequent acts of deployment domestic to our nation, even if the vehicle of its delivery originated beyond our borders. As in the hypothetical case of anthrax where delivery would begin in a package beyond our borders, the initial biological agent delivery in the instant case began beyond our borders. Further, as in the hypothetical case of anthrax detonating inside an office building within our borders, the detonation of the biological agent is now materializing and ravaging Jerez's body here in the United States. Clearly, it is imperative for there to be a remedy for such harms.

Moreover, the Chief Judge conceded that eliminating a foreign state's immunity for traffic accidents was not Congress' sole purpose in enacting § 1605(a)(5). Rather, by enacting § 1605(a)(5), Congress also intended to "den[y] immunity as to claims for personal injury or death . . ." [D.E. 129 at 6, quoting *Amerada Hess*, 488 U.S. at 441]. Replication of the Hepatitis C virus, and cirrhosis of the liver caused by that virus are certainly tortious acts that can cause severe injury and

even death. As such, the tortious acts to which Jerez was subjected are precisely the types of torts that Congress intended to encompass in enacting § 1605(a)(5).

### 3. Terrorist Defendants Have Never Refuted That The Tortious Acts Occurred In The United States.

Based on the evidence presented, such as the Affidavit of Ambassador Valladares, a former U.S. Ambassador to the United Nations Human Rights Commission as well as a former political prisoner of the Cuban Government to which he observed, was witness to, and a victim of biological experiments himself, and the Affidavit of Dr. Jeffers, Jerez has established that he was purposefully subjected to conditions that caused his Hepatitis C infection. (Affidavit of Armando Valladares [D.E. 25-1], A, ¶¶ 2,3, 5-9). Jerez also established that he received Hepatitis C from Cuban officials and that the disease is causing his cirrhosis of the liver, which was diagnosed in its early stages in 1998 – long after Jerez arrived in the United States [D.E. 25-6], F, ¶¶ 5-9].

Moreover, Jerez established that "[t]he Hepatitis C virus is a prolific replicator, able to produce up to a trillion particles per day in an

infected person by hijacking liver cells in which to build up its viral replication machinery." ([D.E. 25-6], I, at 1). Thus, the nature of the Hepatitis C virus and the method by which it replicates itself, hijacks, and ultimately destroys liver cells is a biological attack that begins anew with each cellular replication. From the time of delivery of the Hepatitis C virus in Jerez's body at the hands of Cuba, each deployment (through such viral replication) of the biological agent is an independent event with an identifiable moment of commencement and an identifiable moment of conclusion. Each such identifiable event from the moment of commencement and to the moment of conclusion marks the completion of a tort that fully occurs within the territorial jurisdiction of our nation. Therefore, Jerez is subjected to the tortious acts of the Terrorist Defendants on a daily basis.

Based on the evidence submitted to the Florida State Court, Jerez has established that: (i) he was purposefully injected with Hepatitis C; (ii) the viral replication of Hepatitis C causes a new tortious act to occur inside his body every day; (iii) Hepatitis C has caused the cirrhosis of his liver; and (iv) he is a United States Citizen and has been a United States citizen while these tortious acts have occurred inside of his body.

In other words, he has provided evidence that establishes that he has met all of the requirements of § 1605(a)(5). The Terrorist Defendants have not refuted any of the evidence that establishes that the requirements of § 1605(a)(5) have not been met. Therefore, it was error for the Chief Judge to find that Jerez lacks subject matter jurisdiction under § 1605(a)(5).

### B.    The Terrorism Exception Also Applies.

At the time Jerez secured his State Court Judgment in 2007, a second exception to sovereign immunity was codified under 28 U.S.C. § 1605(a)(7). This exception provided in part that a "foreign state shall not be immune from the jurisdiction of the courts of the United States or of the States in any case . . . in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking . . ." if the foreign state was designated as a state sponsor of terrorism and the claimant was a national of the United States when the act upon which the claim is based occurred.[3] The District Court

---

[3]     The statute also provides that the claimant afford the foreign state a reasonable opportunity to arbitrate the claim in accordance with accepted international rules of arbitration. This requirement presumes

concluded that Jerez did not meet the requirement of § 1605(a)(7) because Jerez was not a United States citizen at the time he was subjected to the acts of torture by the Terrorist Defendants, and because Cuba was not deemed a state sponsor of terrorism at the time these acts of torture occurred. This is incorrect.

### 1. The Court Fails to Recognize the Ongoing Torture Occurring Inside Jerez's Body

In ruling that Jerez did not meet § 1605(a)(7)'s waiver of sovereign immunity, the District Court failed to recognize the medical evidence that established that Jerez suffers from ongoing torture due to the nature of the virus that the Terrorist Defendants purposefully injected into Jerez. ([D.E. 25-6], I, at 1) ("[t]he Hepatitis C virus is a prolific replicator, able to produce up to a trillion particles per day in an infected person by hijacking liver cells in which to build up its viral replication machinery"). The viral replication of the Hepatitis C virus (i.e. the ongoing torture), causes a biological attack to occur inside of Jerez's body on a daily basis. As such, an act of torture is occurring in

---

that the defendants/appellees will appear to be afforded such an opportunity. The defendants/appellees in this case have never appeared at any point in the proceedings and thus have not been deprived of any opportunity to arbitrate.

Jerez's body every day and will continue to occur in Jerez's body every day for the rest of his life.

Jerez was a United States citizen when he filed his State Court Complaint. He is currently and was, when in the Florida State Court, suffering from daily terrorist attacks and torture in the form of the replication of the Hepatitis C virus, which he obtained at the hands of Cuba and the other defendants/appellees. Moreover, Hepatitis C virus has caused Jerez's cirrhosis of the liver while Jerez is a citizen of the United States while residing in the United States. Thus, Jerez, a United States citizen, is undoubtedly suffering from daily acts of torture at a time while Cuba remains a state sponsor of terrorism. As such, Jerez has met the requirements for a waiver of sovereign immunity under § 1605(a)(7).

## 2.    The Florida State Court Determined Jerez Met the Terrorism Exception

While Jerez is currently a United States citizen and was one when he brought his State Court Complaint, the District Court disagreed and found that the Florida State Court would necessarily need to have found Jerez to be an alien in order to rely upon the ATCA. [D.E. 129 at 12]. As we have already argued, before it could even address the causes

- 31 -

of action brought by Jerez, the Florida State Court would have to have first considered the sovereign immunity issues raised by the Complaint. The absence of express analysis of sovereign immunity in the State Court Judgment and the Florida State Court's citation to the ATCA does not mean that the Florida State Court failed to consider subject matter jurisdiction based on Jerez's current status as an United States citizen who is undergoing torture in the form of the replication of the Hepatitis C virus.

In any event, given the facts of this case, the Florida State Court did have subject matter jurisdiction and therefore any failure to provide express reasoning or cite to the ATCA is of no import because the failure to provide analysis or to cite the appropriate statutes does not take away a court's subject matter jurisdiction. A court either has subject matter jurisdiction or it does not. As Jerez established, the Florida State Court had subject matter jurisdiction pursuant to two exceptions to sovereign immunity. The chart below summarizes why the Florida State Court had subject matter jurisdiction:

A Foreign Sovereign Is Immune Under FSIA § 1604 Unless An Exception Exists Under FSIA § 1605

Jerez meets the exception under FSIA § 1605(a)(7) as, while a U.S. citizen, he has suffered a personal injury as the result of torture by the Republic of Cuba and its co-defendants.

Jerez meets the exception under FSIA § 1605(a)(5) as he has incurred personal injury as the result of tortious acts and omissions by the Republic of Cuba and its co-defendants in the United States.

Under FSIA § 1608(e): "No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."

Under FSIA § 1608(e): "No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."

Jerez's complaint alleged both torture (i.e., the relevant conduct under FSIA § 1605(a)(7)) and tort (i.e., the relevant conduct under FSIA § 1605(a)(5)), and the Florida State Court, in concluding that the Republic of Cuba and its co-defendants were not immune under each relative section, predicated its ruling upon such conduct. The Southern District of Florida adopted the Florida State Court judgment.

Moreover, any conflict regarding Jerez's citizenship, was necessarily resolved by the trier of fact, the Florida State Court, who heard the evidence regarding Jerez's citizenship, the tortious acts that Jerez was subjected to, and the injuries resulting from such tortious acts. After hearing such evidence, the Florida State Court found that it had subject matter jurisdiction and the Southern District of Florida subsequently granted full faith and credit to the State Court Judgment. Therefore, the District Court erred in ruling that the Magistrate Judge was able to inspect the subject matter jurisdiction of the State Court Judgment after the Southern District of Florida granted full faith and credit to such judgment. [D.E. 129 at 15].

## CONCLUSION

For the reasons set forth herein, Jerez respectfully requests that this Court reverse the judgment of the District Court, find that the District Court has subject matter jurisdiction to enforce the Florida Judgments, and remand the case for further proceedings.

Respectfully submitted,

/s/ Richard J. Oparil
Richard J. Oparil (DC Bar No. 409723)
Kevin M. Bell
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000
(202) 457-6315 (fax)
roparil@pattonboggs.com

Joseph I. Zumpano
Leon N. Patricios
ZUMPANO PATRICIOS & WINKER, P.A.
312 Minorca Avenue
Coral Gables, Florida 33134
(305) 444-5565
(305) 444-8588 (fax)

*Attorneys for Appellant Nilo Jerez*

# STATUTORY ADDENDUM

**28 U.S.C. § 1603**

For purposes of this chapter—

(a) A "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

(b) An "agency or instrumentality of a foreign state" means any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332 (c) and (e) of this title, nor created under the laws of any third country.

**28 U.S.C. § 1605**

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

(1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

(3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States;

Add. 1

(4) in which rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue;

(5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to—

(A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or

(B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights; or

(6) in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if

(A) the arbitration takes place or is intended to take place in the United States,

(B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards,

(C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or (D) paragraph (1) of this subsection is otherwise applicable.

**<u>28 U.S.C. § 1606</u>**

As to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances; but a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages; if, however, in any case wherein death was caused, the law of the place where the action or omission occurred provides, or has been construed to provide, for damages only punitive in nature, the foreign state shall be liable for actual or compensatory damages measured by the pecuniary injuries resulting from such death which were incurred by the persons for whose benefit the action was brought.

**<u>28 U.S.C. § 1608</u>**

(e) No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court. A copy of any such default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section.

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify the following:

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure and D.C. Circuit Rule 32(a)(3)(B) because this brief contains 7,422 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure and Circuit Rule 32(a)(2).

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using the 2010 version of Microsoft Word in 14 point Century Schoolbook.

/s/ Richard J. Oparil
Richard J. Oparil

# United States Court of Appeals
## for the District of Columbia Circuit

*Nilo Jerez v Republic of Cuba, et al.,* 2013-7141

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by PATTON BOGGS LLP, Attorneys for Appellant to print this document.  I am an employee of Counsel Press.

On **February 25, 2014** counsel for Appellant has authorized me to electronically file the foregoing **OPENING BRIEF FOR APPELLANT NILO JEREZ** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

David B. Goldstein
Michael R. Krinsky.
RABINOWITZ, BOUDIN, STANDARD,
KRINSKY & LIEBERMAN, PC
45 Broadway, Suite 1700
New York, NY 10006
dgoldstein@rbskl.com
mkrinsky@rbskl.com
(212) 254-1111
Counsel for Appellees and Intervenors

Paper copies will also be mailed to the above counsel on this date.

Additionally, five paper copies will be filed with the Court, via Express Mail, on this date.

February 25, 2014

/s/ Robyn Cocho
Robyn Cocho
Counsel Press